IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES OWENS<br>No. K83253,<br><br>    Plaintiff,<br><br>vs.<br><br>STEPHEN DUNCAN,<br>CHRISTIAN,<br>BROOKS,<br>TAYLOR, and<br>TREADWAY<br><br>    Defendants. | Case No. 15−cv−0999−MJR |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff James Owens, an inmate in Lawrence Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff requests nominal, compensatory, and punitive damages and a temporary restraining order to the effect that the Defendants must provide him with a means to transport his legal paperwork in between his cell and the law library. (Doc. 12, p. 9). This case is now before the Court for a preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

Page **1** of **13**

>    (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>       (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>       (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* Amended Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Plaintiff originally filed this case on September 11, 2015. (Doc. 1). The Complaint was dismissed for failure to state a claim on October 28, 2015, but Plaintiff was granted leave to amend on or before November 27, 2015. (Doc. 11). Plaintiff's Amended Complaint was filed on November 30, 2015, although his envelope was postmarked November 23, 2015, bringing him within the Court's deadline. (Doc. 12).

Upon careful review of the Amended Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; this action is subject to summary dismissal.

## The Amended Complaint

Plaintiff has a medical permit to use a cane. (Doc. 12, p. 3). He alleges that he has nerve damage to his left hip and that his left leg will collapse if he stands too long or puts too much weight on it. (Doc. 12, p. 3). He is also a frequent litigator; he has filed eight cases in this Court alone including this one, seven of which are currently pending. *Owens v. IDOC*, 13-cv-0530-SCW; *Owens v. IDOC*, 13-cv-0594-MJR-SCW (closed 3/7/2016); *Owens v. Duncan*, 14-cv-1093-MJR-SCW; *Owens v. Butler*, 14-cv-055-NJR-DGW; *Owens v. Butler*, 15-cv-0327-SMY-PMF; *Owens v. Baldwin*, 15-cv-1085-NJR-SCW; and *Owens v. Duncan*, 15-cv-1143-MJR-SCW.[1] As a result, Plaintiff has four excess legal storage boxes in the law library, which he alleges he must access once a week. (Doc. 12, p. 3). Plaintiff is permitted to access the boxes for 30 to 40 minutes per week, followed by 90 minutes in the law library. (Doc. 12, p. 3). After law library, lunch is served in the dining room, and there is not sufficient time for an inmate to return to his cell to drop of legal materials. (Doc. 12, p. 3).

In June 2015, Duncan, the Warden at Lawrence, changed the institutional policy and prohibited inmates from using bags to carry their legal materials to the law library. (Doc. 12, p. 3). Prior to that time, Plaintiff used a mesh bag to carry his legal materials, which permitted him to carry their weight on his back, without implicating his bad hip. (Doc. 12, p. 3). Plaintiff alleges that there is no legitimate penological reason for this rule change other than to limit the amount of legal work an inmate can carry to and

---

[1] The Amended Complaint alleges that Plaintiff has 10 pending cases total.

from the law library. (Doc. 12, p. 3). As a result of the new policy, Plaintiff's plastic bag was confiscated by Christian on July 7, 2015. (Doc. 12, p. 3). Plaintiff then filed an emergency grievance regarding the confiscation of his plastic bag, as well as several kites to Treadway. (Doc. 12, p. 3-4). Plaintiff's grievance was denied on July 9, 2015, and Duncan also declined to make an exception for Plaintiff when Plaintiff spoke to him in person. (Doc. 12, p. 4).

On September 4, 2015, Plaintiff entered the dining room with a large folder of legal materials. (Doc. 12, p. 4). Brooks yelled at him to take off his hat, which Plaintiff did, although he alleges that he had to lean against the wall and balance on his good leg. (Doc. 12, p. 4). Brooks then told Plaintiff that he could not set his legal papers down on a table before getting a lunch tray, as he had been doing since the "no-bags" order came down. (Doc. 12, p. 4). Plaintiff then approached Taylor and Duncan explained the situation to them. (Doc. 12, p. 4). Brooks told Plaintiff he could hang his cane over his arm and thus carry both his tray and his legal papers. (Doc. 12, p. 4). Taylor told Plaintiff just to deal with the situation. (Doc. 12, p. 4). Duncan said nothing. (Doc. 12, p. 4). Ultimately, a dining room employee brought Plaintiff his tray. (Doc. 12, p. 4-5). Taylor then looked through Plaintiff's legal papers, including correspondence between Plaintiff and his attorneys. (Doc. 12, p. 5).

On September 17, 2015, Plaintiff went to lunch after a law library session and Brooks again refused to allow him to leave his legal materials unattended on the table. (Doc. 12, p. 5). Brooks also refused to permit another inmate to bring Plaintiff a tray

and told Plaintiff he had to find a way to carry his legal papers and his tray. (Doc. 12, p. 5). Plaintiff did not get to eat the meal. (Doc. 12, p. 5).

Specifically, the changes to the Amended Complaint include the addition of more facts about Plaintiff's age and hip condition, as well as an explanation of why his hip condition makes it preferable for him to use a bag to carry his legal papers. Plaintiff has also clarified that the bags he used were see-through and frequently searched by staff. He provided more facts about the amount of time he is permitted to use the law library. He also included information about the rule prohibiting inmates from being in possession of other inmates' legal work. Plaintiff also included facts regarding the September 17, 2015 incident.

## Discussion

Plaintiff has divided his Amended Complaint up into five counts, which closely track the claims he previously tried to bring. The parties and the Court will use these designations and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1 – Defendants, individually or in conspiracy, have violated Plaintiff's rights under the ADA and Rehabilitation Act by denying him an accommodation so he can use his cane; and carry his legal papers and his food tray;**

**Count 2 – Defendants, individually or in conspiracy, have denied Plaintiff equal access to his legal materials, in violation of the Constitution;**

**Count 3 – Defendants, individually or in conspiracy, have retaliated against Plaintiff for filing grievances and lawsuits, in violation of the First Amendment;**

**Count 4 – Defendants, individually or in conspiracy, have imposed cruel and unusual punishment upon Plaintiff in violation of the Eighth Amendment; and**

**Count 5 – Defendants, individually and in conspiracy, have violated Plaintiff's attorney-client privilege.**

Like its predecessor, the Court finds that the Amended Complaint, as drafted, fails to state a single colorable claim.  As this is Plaintiff's second bite at the apple, the Court will dismiss the Amended Complaint with prejudice and assess a strike.

As to Plaintiff's conspiracy claims**,** previously the Court found that Plaintiff had not adequately pled enough facts to state a claim for conspiracy.  "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304-05 (7th Cir. 2011).  As the Court's prior order noted, the fact that all five Defendants enforced the same rule, standing alone, does not establish a conspiracy.  None of the new facts that Plaintiff has added to his Amended Complaint go to whether the Defendants had an agreement to single out Plaintiff or that they had reached an understanding to deprive Plaintiff of his constitutional rights.  Therefore, once again, all of Plaintiff's conspiracy claims fail.

As to **Count 1**, this claim must be dismissed.  In its prior order, the Court noted that Plaintiff had not pleaded that he was denied access to, or the benefits of, any service, program, or activity. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (citing *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996)).  The additional facts that Plaintiff has provided do not make it plausible that he was denied access to a program or benefit.  Plaintiff has not provided any specific examples of a time that his

ability to litigate was hindered Plaintiff has simply restated his position that because he has a lot of lawsuits, and by extension, a lot of legal documents, it is harder for him to move his documents around. Generally, an amended complaint that states the same facts using different language will be futile. *See Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 970 (7th Cir. 1994). Here, Plaintiff has merely restated his original claim without adding facts that would tend to make it plausible. This claim must therefore be dismissed.

**Count 2** was previously dismissed for failure to state a claim because the law does not recognize an "equal access" claim that would entitle Plaintiff to relief because he cannot carry as many documents as an abled-bodied person. Plaintiff has not corrected this deficiency, and this claim will now be dismissed with prejudice.

**Count 3** raises claims that Defendants retaliated against Plaintiff. As pointed out in the Court's earlier Order, retaliation claims require a plaintiff to identify the form of the retaliation as well as its motivation in order to give adequate notice to the defendants. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The motivation must be a protected First Amendment activity. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). Here, Plaintiff's vague statement that he engaged in protected activity like filing grievances and lawsuits does not support a claim because Plaintiff has not identified the *specific* grievances and lawsuits that motivated the retaliation. And even if he had, the Court's prior conclusion would still stand—Plaintiff has not pleaded that his inability to use a bag has deterred him from engaging in those protected activities. In fact, a review of the Court's docket reveals that Plaintiff remains an active litigant in his cases. As

Plaintiff has not pleaded enough facts to make this claim plausible, it too will be dismissed with prejudice.

As to **Count 4**, the Court previously determined that Plaintiff had not alleged that he had been punished in any way, shape, or form. The Court further stated that the fact that Plaintiff had to solve the no-bag problem could not be characterized as "cruel and unusual" punishment. In his Amended Complaint, Plaintiff has attacked the Court's example of an alternate means of dealing with his tray/papers problem—asking another inmate to carry his legal work—by alleging that other inmates are not allowed to carry his legal work due to rule prohibiting inmates from being in possession of others' legal work and by alleging one incident where another inmate was not permitted to bring him a tray. Plaintiff has alleged that he was deprived of lunch one time as a result of these policies.

But that is not sufficient to state a claim for cruel and unusual punishment. *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999) ("This is not to say that withholding food is a *per se* objective violation of the Constitution; instead, a court must assess the amount and duration of the deprivation."). Plaintiff, an inmate who is 5'4'' and weighs approximately 180 lbs, alleges that he missed one meal. He has not alleged that he lost any weight over this incident or that his health otherwise suffered. Most of Plaintiff's Amended Complaint is focused on the deprivation of the bag, not his lunch. Plaintiff's complaints that he suffered from cruel and unusual punishment are not plausible, and

the Court's prior conclusion that Plaintiff has merely described inconvenient conduct stands.

The Seventh Circuit has also distinguished between using food deprivation as a punishment and establishing reasonable rules that may lead to the deprivation of food. *Freeman v. Berge*, 441 F.3d 543, 545 (7th Cir. 2006) (finding that a plaintiff who missed meals because he refused to wear pants did not suffer from cruel and unusual punishment). Here, Plaintiff has alleged that because he likes to carry around large amounts of legal documents, he missed one meal. He tries to state that the rule prohibiting a more convenient means of carrying around legal work is at fault, but it is Plaintiff's choice to carry 8 inches of legal work. Plaintiff has not stated a claim for cruel and unusual punishment.

The most notable change to Plaintiff's Amended Complaint is the addition of **Count 5**, which alleges that the Defendants violated Plaintiff's attorney-client privilege when Taylor looked through Plaintiff's legal papers. As an initial matter, because the Court has rejected Plaintiff's conspiracy claims, the only Defendant implicated in this claim is Taylor. But the claim fails regardless. Attorney-client privilege extends to confidential communications between client and attorney, made "in order to obtain legal assistance." *Fisher v. United States*, 425 U.S. 391, 403 (1976). Its purpose is "to encourage clients to make full disclosure to their attorneys," and its scope is informed by this purpose. *Id.* Because the privilege may operate "in derogation of the search for truth," we "construe the privilege to apply only where necessary to achieve its

purpose." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007) (internal quotation marks and citations omitted). Accordingly, the privilege covers "only those communications which reflect the lawyer's thinking [or] are made for the purpose of eliciting the lawyer's professional advice or other legal assistance." *United States v. Leonard-Allen*, 739 F.3d 948, 952-53 (7th Cir. 2013), as amended on denial of reh'g and reh'g en banc (Aug. 29, 2013) (citing *BDO Seidman*, 492 F.3d at 815). Privilege standing alone does not state a constitutional claim. *Maness v. Meyers,* 419 U.S. 449, 466 n. 15 (1975); *Guajardo-Palma v. Martinson*, 622 F.3d 801, 802 (7th Cir. 2010); *Lange v. Young,* 869 F.2d 1008, 1012 n. 2 (7th Cir. 1989). An inmate has no constitutional claim unless he can demonstrate that a non-frivolous legal claim has been frustrated or impeded. *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996).

Here Plaintiff has not alleged that any of his legal claims were impeded or hindered when Taylor perused the correspondence between him and his attorney. In short, he has only alleged that the privilege was violated, which standing alone, fails to support a claim. He has not even identified which case was at issue. In the absence of such facts, Plaintiff has not adequately made a claim based on attorney-client privilege. More generally, although Plaintiff has alleged impediment throughout his Amended Complaint, the lack of pleading that an action was actually frustrated dooms any claim he might bring for access to courts based on the conduct at issue here. Plaintiff's **Count 5** will therefore be dismissed with prejudice.

### Temporary Restraining Order

Plaintiff's Amended Complaint also contains a request for a temporary restraining order ("TRO"), which the Court has twice previously denied. The Amended Complaint does not contain any more facts than his previous motion that requested a temporary restraining order. (Doc. 9). As the Court noted then, a TRO is an order issued without notice to the party to be enjoined that may last no more than 14 days. Fed. R. Civ. P. 65(b)(2). A TRO may issue without notice only if:

> (A) Specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.
>
> Fed. R. Civ. P. 65(b)(1)

Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). Plaintiff's previous motions for a TRO were denied because Plaintiff had not shown that he was facing or likely to incur, immediate and irreparable injury, loss or damage. The Court finds that this conclusion is still true. The request for a TRO in the Amended Complaint is therefore **DENIED**.

## Disposition

**IT IS HEREBY ORDERED** that **Counts 1-5** fail to state a claim upon which relief may be granted, and thus are **DISMISSED with prejudice**. The Amended Complaint is therefore **DISMISSED with prejudice**

Plaintiff is advised that this dismissal shall count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).  Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350 remains due and payable.  *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment.  FED. R. APP. P. 4(a)(1)(A).  A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal.  *See* FED. R. APP. P. 24(a)(1)(C).  If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal.  *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).  Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike."  A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.  FED. R. APP. P. 4(a)(4).  A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk shall **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATED: August 22, 2016**

                                                  s/ MICHAEL J. REAGAN
                                                  **U.S. District Judge**